UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIKE AVILA TRUSTEE, BRICKLAYERS OF INDIANA RETIREMENT FUND AND BRICKLAYERS OF INDIANA HEALTH AND WELFARE FUND, STEVEN KNOWLES TRUSTEE (substituted 10/3/2014),<br><br>     Plaintiffs,<br><br>     vs.<br><br>BRONGER MASONRY, INC., an Indiana for profit domestic corporation,<br>MASONRY SERVICES, INC., an Indiana for profit domestic corporation,<br><br>     Defendants.<br>_____<br><br>MASONRY SERVICES, INC., an Indiana for profit domestic corporation,<br><br>     Counter Claimant,<br><br>     vs.<br><br>BRICKLAYERS OF INDIANA RETIREMENT FUND AND BRICKLAYERS OF INDIANA HEALTH AND WELFARE FUND,<br><br>     Counter Defendant. | No. 1:14-cv-00913-JMS-DKL |

## **ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

Presently pending before the Court is Plaintiffs' Motion for Temporary Restraining Order. [Filing No. 118.] Plaintiffs ("Plaintiffs" or the "Funds") are various funds established pursuant to collective bargaining agreements previously entered into between bricklayers and the International

1

Union of Bricklayers & Allied Craftsman Local 4 of IN & KY (the "Union"). [Filing No. 158 at 2.] Plaintiffs allege that Defendant Bronger Masonry, Inc. ("Bronger") has evaded its contractual obligation to pay the Funds by forming an alter ego corporation, Defendant Masonry Services, Inc. ("Masonry"). [Filing No. 158.]

In response to questions the Court submitted to the parties before the hearing on the pending motion, Plaintiffs clarified that they are actually seeking a preliminary injunction against Masonry, not a temporary restraining order as initially requested. [Filing No. 151 at 2.] Plaintiffs recognize that this "is not a trial on the merits" and have amended their requested relief to eliminate a claim for past damages and to seek prospective relief in the form of money damages from Masonry beginning on the date of any injunction. [Filing No. 164 at 15.] Masonry opposed Plaintiffs' request, both in a brief in opposition and at the hearing. [Filing No. 147.] Bronger did not respond to Plaintiffs' motion or appear at the hearing, and its counsel has since been granted leave to withdraw. [Filing No. 161.]

For the reasons that follow, the Court denies Plaintiffs' request for injunctive relief against Masonry. While Plaintiffs have shown a likelihood that they will succeed on the merits of their claim, they have not shown that there is no adequate remedy at law or that they will suffer irreparable harm if their requested injunction is denied. Because they have not met a threshold requirement for obtaining injunctive relief, Plaintiffs' request must be denied.

# I.
### APPLICABLE STANDARD

"To obtain a preliminary injunction, the moving party must show that its case has 'some likelihood of success on the merits' and that it has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir.

2011)). "If the moving party meets these threshold requirements, the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "The district court must also consider the public interest in granting or denying an injunction." *Stuller*, 695 F.3d at 678.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006). Because the merits of the underlying litigation are not at issue at this stage, "'the reluctance to disturb the status quo prior to trial on the merits is an expression of judicial humility . . . [that] enables the court to stay relatively neutral in the underlying legal dispute.'" *Id.* at 945-46 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir. 2004)).

## II.
### PROCEDURAL HISTORY

On June 4, 2014, Plaintiffs filed this action against Defendants Masonry and Bronger pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). [Filing No. 1 (citing 29 U.S.C. § 1132).] Plaintiffs allege that Bronger is an Indiana for-profit corporation that entered into successive collective bargaining agreements that require Bronger to make periodic contributions to the Funds on behalf of Bronger's bargaining-unit employees. [Filing No. 158 at 2.] Plaintiffs allege that Masonry is the successor of Bronger and, under an alter ego theory, Masonry's employees should be considered Bronger's bargaining unit employees. Plaintiffs thus

assert that Masonry is liable for unpaid benefits that it/Bronger did not pay the Funds on behalf of those employees. [Filing No. 158 at 3.]

On May 6, 2015, Plaintiffs moved for injunctive relief. [Filing No. 118.] Masonry opposed Plaintiffs' request, [Filing No. 147], and the Court held an evidentiary hearing on June 1, 2015, [Filing No. 157]. At the evidentiary hearing, Plaintiffs clarified that they request a preliminary injunction and seek prospective relief only. Plaintiffs ask the Court to order Masonry to pay the benefits they claim the Funds are due from the date of the requested preliminary injunction forward. [Filing No. 164 at 14-17.] The parties submitted their proposed findings of fact and conclusions of law after the hearing. [Filing No. 174; Filing No. 178.] The Court has reviewed those submissions, and now makes the following findings and conclusions thereon.

## III.
### SUMMARY OF RELEVANT EVIDENCE

The following witnesses testified at the evidentiary hearing on Plaintiffs' request for injunctive relief: Cathy Fulks; Harold Sattison; Sonia Bittle; Rebecca Lambert; Steven Wagner; Ted Champ; Mark Carver; Nickolas Cook; Peter Cook; Jeremy Bills; Jeff Welty; Showne Bleu McKinney; and Dwayne Bronger. The following exhibits were admitted, without objection unless noted: 22; 48; 70; 56 (Bates stamped 3374-3526); 51 (Bates stamped 2835-2837); 10; 73; 11; 12; 26; 27; 28; 29; 42; 43; 44; 30; 31; 32; 33; 8; 9; 14; 15; 13; 45; 23 (amended to include Volume III as a continuation of the exhibit); 52; 40; 72; 41; 37 (over objection); 38; 39; 66; 68; 71; 69 (judicial notice); and 67 (judicial notice). The Court will only summarize the evidence that is material to its ruling on Plaintiffs' request for injunctive relief.[1]

---

[1] The Court notes that even though the hearing was not a trial on the merits, the evidence received "that would be admissible at trial becomes part of the trial record and need not be repeated at trial." Fed. R. Civ. Pro. 65(a)(2).

The Court makes the following findings for purposes of the pending motion only. Nothing herein should be read to apply to the merits of Plaintiffs' Motion for Summary Judgment, [Filing No. 169], which Plaintiffs filed while their request for injunctive relief was pending. Of course that motion must be reviewed under the familiar standard of review, where all reasonable inferences are afforded to the non-movant, *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008), and the Court is unable to make credibility determinations, *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

### A. The Parties

Bronger was incorporated on March 5, 2002, by Dwayne Bronger to perform commercial masonry and construction work. [Filing No. 164 at 279 (referencing Exhibit 41).] Mr. Bronger was the President of Bronger and "performed everything at some point in time" for the company. [Filing No. 164 at 292.]

Effective March 5, 2002, Bronger entered into a Memorandum of Agreement (the "Agreement") with the Union, in which Bronger recognized the Union as the sole and exclusive collective bargaining representative for Bronger's employees. [Filing No. 119-1 at 2.] Bronger agreed to be bound by the terms and conditions of the Agreement unless it served written notice of termination pursuant to the Agreement, [Filing No. 119-1 at 2], which it has not done, [Filing No. 151 at 7; Filing No. 164 at 283]. The Agreement binds Bronger to a Statewide Uniform Agreement ("Statewide Agreement") entered into by the Union.[2] [Filing No. 119-2; Filing No. 164 at 141.] The Union contends that because Bronger signed the Agreement, all of Bronger's

---

[2] The Court will assume this is true for purposes of ruling on Plaintiffs' request for injunctive relief. There was a discussion on this point between the parties and the Court before evidence was presented at the hearing, [Filing No. 164 at 38-44], but no party has argued that Bronger is not bound to the Statewide Agreement.

5

employees have benefits paid to the Funds pursuant to the Statewide Agreement regardless of whether the employees are members of the Union. [Filing No. 164 at 142-43.] Bronger made contributions to the Funds pursuant to the Agreement and the Statewide Agreement from 2002 to October 2014. [Filing No. 164 at 297.]

Masonry was incorporated on November 13, 2012. [Filing No. 164 at 245 (referencing Exhibit 40).] Showne B. McKinney is listed as the incorporator on Masonry's Certificate of Incorporation. [Exhibit 40.] Bronger and Masonry perform the same type of work. [Filing No. 164 at 248.] Mr. McKinney does not consider Bronger and Masonry to be competitors, however, because Bronger is a union company and Masonry is a non-union company. [Filing No. 164 at 248.] At issue in this litigation is whether Masonry is the alter ego of Bronger, such that Masonry is bound to the Agreement with the Union and should be contributing money to the Funds. [*See, e.g.*, Filing No. 1.]

Plaintiffs are five employee benefit funds—three are defined contribution pension funds and two are health and welfare plans for disability and health insurance benefits. [Filing No. 164 at 36-38.] Because the parties have not made a relevant distinction between the individual funds for purposes of the pending motion, the Court will treat the pension funds collectively and the health and welfare plans collectively.

HealthSCOPE Benefits ("HealthSCOPE") is the administrator of the Funds at issue. [Filing No. 164 at 91-92.] It administers a defined contribution plan, which is an ERISA plan where employers are required to make contributions on a participant's behalf to pay retirement when the employee retires. [Filing No. 164 at 93.] That plan does not owe benefits unless money is paid into it. [Filing No. 164 at 99.] HealthSCOPE also administers a health and welfare plan, for which it takes the contributions and the insurance is underwritten by a different company.

6

[Filing No. 164 at 101-02.] There are requirements regarding the number of hours an employee must work to be qualified for coverage under the health and welfare plan, otherwise the employee may make a self-payment to be insured under the plan. [Filing No. 164 at 102-03.]

An employee need not be a member of the Union to have contributions made on the employee's behalf. [Filing No. 164 at 117-18.] When an employer stops making contributions, any money not collected becomes a loss to the plans "because they have lost investment earnings for those contributions that are supposed to be paid on behalf of the participant" and the plans still "have to provide those benefits to the participant because those contributions haven't been paid." [Filing No. 164 at 116.]

Bronger stopped making all contributions to the Plaintiff funds in October 2014. [Filing No. 164.] Plaintiffs must credit any work performed by covered employees after that time, regardless of whether Bronger contributed to the Funds. Any work performed after that for which Bronger did not make contributions is the Plaintiffs' responsibility. [Filing No. 164 at 108.] With regard to various individual employees, Bronger stopped making contributions in late 2013. [*See, e.g.*, Filing No. 164 at 110 (referencing Exhibit 27 (report for Mark Carver showing last Bronger contribution in August 2013); Exhibit 28 (report for Nickolas Cook showing last Bronger contribution in December 2013)).] Masonry has never made any contributions to the Funds. [Filing No. 164 at 130.] Instead, Masonry paid its employees the Union scale wage plus the amount that would have gone to fringe benefits with the Funds. [Filing No. 164 at 164.] The Union did not ask HealthSCOPE to communicate with any Masonry employees regarding their possible rights under the plans at issue, and no communication of that nature was made to any Masonry employee. [Filing No. 164 at 119.]

The Funds at issue are fully funded. [Filing No. 164 at 116.] An employee vests in the defined-benefit plan after five years of service and can seek pension benefits when he reaches fifty-five years old. [Filing No. 164 at 120; Filing No. 164 at 124.] There is no evidence that any Masonry employee vested based on years of service with Bronger or that any employee would be vested based on combined years of service with Masonry and Bronger. [Filing No. 164 at 120.] No Bronger employee has made a claim on the Funds at issue in this litigation. [Filing No. 164 at 123.] No Masonry employee has made a claim on the Funds at issue in this litigation. [Filing No. 164 at 118.] There was no evidence that the health and welfare plan faced any ongoing liability for claims that might have been incurred but not submitted by the date of the hearing.

Richard J. Wolf Company ("Wolf") performed a fringe benefit contribution compliance audit of Masonry from January 1, 2013 through January 31, 2015, and concluded that if Masonry had been a signatory to the CBA, it would owe $1,204,241.02 in total damages to the local funds and $308,448.15 to the international fund.[3] [Filing No. 164 at 129-34 (referencing Exhibit 30 and Exhibit 31).] Although the Court ultimately finds for purposes of this motion that Plaintiffs have shown a high likelihood of success on the merits, it makes no findings regarding the validity of the damages proffered in the Wolf reports, particularly since they address past damages and Plaintiffs are only seeking prospective relief in the pending motion.

### B. Prior Litigation

Modern Masonry, Inc. ("Modern") was incorporated on January 21, 2009. [Filing No. 164 at 280-82 (referencing Exhibit 37).] Modern's Articles of Incorporation list Jennifer Bronger, Mr.

---

[3] Wolf also audited Bronger from January 1, 2010 through December 11, 2014, and concluded that Bronger would owe $13,419 to the defined benefit plan. [Filing No. 164 at 135 (citing Exhibit 32).] Because Plaintiffs do not ask for injunctive relief from Bronger, the Court will not address this further.

Bronger's wife, as the principal, [Filing No. 164 at 282 (*see also* Exhibit 37)], but she "had absolutely nothing to do with the company," [Filing No. 164 at 282]. Mr. Bronger admits that when he incorporated Modern, he was "taking the risk that that could be found to be in violation of the Bronger collective bargaining agreement." [Filing No. 164 at 282.]

On June 23, 2010, various plaintiff funds sued Bronger and later added Modern as a defendant, alleging that Modern was the alter ego of Bronger and was only established to avoid Bronger's Agreement with the Union (the "Prior Litigation"). [Cause No. 1:10-cv-798-TAB-LJM Filing No. 1 and Filing No. 28.] Mr. Bronger testified at the hearing in this matter that in support of a motion for summary judgment in the Prior Litigation, he signed an affidavit attesting that "I do not, nor have I ever had, the authority or opportunity to make management decisions or hire or fire an employee for any other registered company." [Filing No. 164 at 286 (referencing Exhibit No. 66).] As discussed below, Mr. Bronger has since recanted these statements.

Merit Management Services, LLC ("Merit") was incorporated on March 10, 2011. [Filing No. 164 at 284 (referencing Exhibit 39).] Merit's Articles of Organization listed Ms. Bronger as the sole member of Merit, but Mr. Bronger was actually the owner and Ms. Bronger "really had nothing to do with it." [Filing No. 164 at 284-85.]

Division 4 Masonry Services, LLC ("Division 4") was incorporated on March 11, 2011. [Filing No. 164 at 283 (referencing Exhibit 38).] Ms. Bronger was listed as the principal of Division 4 in its Articles of Incorporation, but "[s]he had nothing to do with that company either." [Filing No. 164 at 283.] Mr. Bronger admits that by forming Division 4, he was trying to circumvent the Agreement with the Union by setting up another company. [Filing No. 164 at 284.]

Upon discovering Merit and Division 4, the plaintiffs in the Prior Litigation moved to amend their pleadings to assert claims against those entities as well. [Cause No. 1:10-cv-798-

TAB-LJM Filing No. 51.] While that motion was pending, the parties settled the Prior Litigation, and the pending motions were denied as moot. [Cause No. 1:10-cv-798-TAB-LJM Filing No. 84.] Approximately four months later, in February 2012, the plaintiffs moved to reinstate the Prior Litigation, arguing that provisions of the settlement agreement mandating that Mr. and Ms. Bronger maintain no relationship with or interest in Modern, Merit, or Division 4 had been violated. [Cause No. 1:10-cv-798-TAB-LJM Filing No. 85.] In response to that motion, Mr. Bronger filed an affidavit attesting that Ms. Bronger was the former owner of Merit and that he never had any ownership interest in Merit. [Cause No. 1:10-cv-798-TAB-LJM Filing No. 86-1; *see also* Exhibit 68.] Ultimately, the parties again settled the Prior Litigation and the case was closed on July 3, 2013. [Cause No. 1:10-cv-798-TAB-LJM Filing No. 101; Filing No. 117.]

### C. Relationship Between Bronger and Masonry

In October 2012, Mr. Bronger wanted to bid for work on a project for a Honda Fishers dealership. [Filing No. 164 at 301.] Bronger and Merit were under an order from the Previous Litigation "to wind down all of these alter ego operations," so Mr. Bronger approached Mr. McKinney about starting a new company called Masonry. [Filing No. 164 at 302-03.] Mr. Bronger told Mr. McKinney that he wanted to incorporate Masonry and wanted Mr. McKinney to run it. [Filing No. 164 at 303.] Mr. McKinney agreed, so Mr. Bronger formed Masonry and listed Mr. McKinney on the forms with his permission. [Filing No. 164 at 303.] Mr. Bronger testified that Masonry was set up "with the intention of supplementing the work with Bronger Masonry." [Filing No. 164 at 307.] Mr. McKinney disputes that characterization, testifying that he

incorporated Masonry and has always been its president and sole shareholder.[4] [Filing No. 164 at 251-52.] The Court finds Mr. Bronger's testimony to be credible for purposes of resolving the pending motion for injunctive relief.

Bronger and Masonry performed "identical" work, but Mr. McKinney does not consider the companies to be competitors because Bronger was a union company and Masonry was non-union. [Filing No. 164 at 248.] The "vast overwhelming amount" of equipment used by Masonry was owned by Bronger. [Filing No. 164 at 247.]

Mr. Bronger wire transferred $19,700 to Masonry to get it started. [Filing No. 164 at 249.] As Masonry made money, it would write checks to Bronger in various amounts. [Filing No. 164 at 305; Filing No. 164 at 221-230.] From October 2013 to November 2014, Masonry wrote checks to Bronger totaling more than $1,000,000. [Filing No. 164 at 230.] Mr. McKinney was the only signatory on Masonry's account. [Filing No. 164 at 252.] Bronger sometimes paid the payroll for Masonry when Masonry could not fund it. [Filing No. 164 at 232; Filing No. 164 at 254.] Mr. McKinney testified that those payments were a loan and were paid back, but that there was never a formal loan agreement and he is not sure whether Masonry owes Bronger money or Bronger owes Masonry money. [Filing No. 164 at 254-55.] Mr. Bronger testified that "[i]t is kind of convoluted" but that Mr. McKinney "still owes Bronger Masonry about $200,000." [Filing No. 164 at 307.]

---

[4] While the Court finds Mr. Bronger's testimony to be credible for purposes of this motion, this finding is for purposes of this motion only and does not foreclose this issue from being disputed on summary judgment or at a trial on the merits. The Court is able to make credibility determinations in resolving the pending motion that it will not make at the summary judgment stage of these proceedings. *Kinney for & on Behalf of N.L.R.B. v. Int'l Union of Operating Engineers*, 994 F.2d 1271, 1278 (7th Cir. 1993) (district court's credibility determination after injunction hearing entitled to deference); *O'Leary*, 657 F.3d at 630 ("It is not for courts at summary judgment to weigh evidence or determine the credibility of a witness's testimony.").

As of March 2015, Masonry had approximately $11,000 in its bank account. [Filing No. 164 at 212.] In June 2015, Masonry had approximately $95,000 in its account. [Filing No. 164 at 252.] Bronger ceased business on or around January 1, 2015, and has since been liquidating its assets. [Filing No. 164 at 306.]

## IV.
## DISCUSSION

Plaintiffs ask this Court to enter a preliminary injunction in their favor and order Masonry to pay the benefits they claim the Funds are due from the date of the requested preliminary injunction forward. [Filing No. 164 at 14-17.] Masonry objects to Plaintiffs' request. [Filing No. 147.] The Court will address the factors necessary for obtaining a preliminary injunction in turn.

### A. Likelihood of Success on the Merits

Plaintiffs contend that there is a high likelihood that they will prevail on the merits. [Filing No. 119 at 12.] They claim that the evidence "overwhelmingly demonstrates" that Masonry is the alter ego of Bronger and, as such, Masonry is bound to the Agreement and owes the Funds fringe benefits for its employees. [Filing No. 119 at 13.] They point to Mr. Bronger's fraudulent intent when establishing Masonry, the commingling of funds between the companies, the fact that Bronger and Masonry were in the same line of work, Masonry's use of Bronger's equipment, and Masonry's service of Bronger's customers and takeover of the Honda Fishers job. [Filing No. 119 at 11-23.]

In response, Masonry conceded at the hearing that Plaintiffs have a "better than negligible opportunity that they will succeed on the merits." [Filing No. 164 at 33.] Masonry emphasizes, however, that whether it is the alter ego of Bronger is the ultimate issue to be decided at trial, not at this stage of the proceedings. [Filing No. 147 at 2-3.] Masonry alludes to an argument it makes later in its opposition that Masonry's employees should not be forced to contribute to the Funds

12

because of Indiana's Right to Work law. [Filing No. 147 at 4 (referencing Filing No. 147 at 8-9) (emphasizing that it "is the employee[']s choice even if he is a union member, not his employer[']s or the union's choice").]

In reply, Plaintiffs point out that Masonry does not dispute any of the factual allegations that Plaintiffs contend shows their likelihood of success on the merits of Plaintiffs' alter ago claim. [Filing No. 149 at 2.]

"[T]he alter ego doctrine focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (internal citation omitted). "[U]nlawful motive or intent are critical inquiries in an alter ego analysis." *Id.* Some relevant factors for analyzing an alter ego claim are whether the companies have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998). When a business entity is the alter ego of another, they are "the same entity" and liability is "not vicarious but direct." *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000).

The Court agrees with Plaintiffs that based on the evidence of record, Plaintiffs have a high likelihood of establishing at a trial on the merits that Masonry is the alter ego of Bronger. Because Masonry mounted a weak defense on this point at this stage of the proceedings, the Court will only cite the most compelling evidence.

Mr. Bronger approached Mr. McKinney about starting a new company called Masonry because Mr. Bronger wanted to bid for work on the Honda Fishers job, but Bronger was under an

order from the Previous Litigation "to wind down all of these alter ego operations." [Filing No. 164 at 301-03.] Mr. Bronger incorporated Masonry but listed Mr. McKinney on the forms. [Filing No. 164 at 303; Filing No. 164 at 307.] Mr. Bronger set up Masonry "with the intention of supplementing the work with Bronger Masonry." [Filing No. 164 at 303; Filing No. 164 at 307.]

Mr. Bronger wire transferred $19,700 to Masonry to get it started. [Filing No. 164 at 249.] As Masonry made money, it would write checks to Bronger in various amounts. [Filing No. 164 at 305; Filing No. 164 at 221-230.] From October 2013 to November 2014, Masonry wrote checks to Bronger totaling more than $1,000,000. [Filing No. 164 at 230.] Bronger sometimes paid the payroll for Masonry when Masonry could not fund it. [Filing No. 164 at 232; Filing No. 164 at 254.] There was never a formal loan agreement between Bronger and Masonry. [Filing No. 164 at 254-55.] Bronger and Masonry performed "identical" work and the "vast overwhelming amount" of equipment used by Masonry was owned by Bronger. [Filing No. 164 at 247-48.] Masonry used Bronger employee Alisha Fowler for Masonry's payroll, new hire applications, and office management. [Filing No. 164 at 251.]

Given this evidence—particularly Mr. Bronger's admission at the hearing regarding his intentions when forming Masonry—the Court concludes that Plaintiffs have established a high likelihood of success regarding their claim that Masonry is the alter ego of Bronger. Because alter ego liability is direct rather than vicarious, *Elite Erectors*, 212 F.3d at 1038, Masonry's argument regarding Indiana's Right to Work law does not alter the Court's conclusion, since Bronger and Masonry would be considered the same entity if Plaintiffs prevail on their claim.

### B. Plaintiffs' Irreparable Harm and Adequacy of Remedy at Law

Plaintiffs argue that they will suffer irreparable harm and have no adequate legal remedy if injunctive relief is not entered because Masonry and Bronger "are undercapitalized and face

14

considerable liability." [Filing No. 119 at 23.] Plaintiffs further contend that failing to collect fringe benefits to which the Funds are entitled would have an adverse effect upon the Funds because the participants and beneficiaries will not receive their medical benefits and the Funds "will suffer lost investment opportunities on these contributions." [Filing No. 119 at 23.]

In response, Masonry emphasizes that economic damages do not create irreparable harm and that the general rule is that injunctive relief is inappropriate when money damages are an adequate remedy at law. [Filing No. 147 at 4.] Masonry cites evidence that since December 2012, none of its employees have been members of the Union and claims that the Funds have no obligation to provide benefits or health coverage to them. [Filing No. 147 at 6.] Masonry distinguishes the cases cited by Plaintiffs because none of them involved an alter ego allegation, which is a fact-sensitive, merits-based inquiry. [Filing No. 147 at 7.]

In their reply, Plaintiffs point out that if Masonry is found to be the alter ego of Bronger, the defined-benefit pension fund requires Plaintiffs to credit all hours worked by Masonry employees, regardless of whether the employer makes contributions. [Filing No. 149 at 9.] Plaintiffs again cite the lost investment opportunities they are allegedly suffering by Masonry not paying the Funds based on hours worked by its employees. [Filing No. 149 at 9.]

Since filing their initial motion, Plaintiffs have amended their requested relief to seek an injunction ordering Masonry to pay the Funds money damages equal to the amount of fringe benefits they claim they are owed for the work of Masonry's employees from the date of the injunction forward. [*See, e.g.*, Filing No. 164 at 14-17.] Where the only remedy sought is damages, the two requirements—irreparable harm, and no adequate remedy at law—merge. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). In that case, "[t]he question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded

damages." *Id.* The plaintiff need not show that an award of damages at the end of trial will be "wholly ineffectual," but it must be "seriously deficient as a remedy for the harm suffered." *Id.*

It is not enough for a party seeking an injunction to show that injury is possible; instead, the plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (original emphasis). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* Moreover, to obtain injunctive relief, the injured party must "demonstrate that traditional legal remedies, *i.e.*, money damages, would be inadequate." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008).

Plaintiffs heavily rely on *Gould v. Lambert Excavating, Inc.*, where a preliminary injunction was issued against an employer alleged not to be paying contractually obligated fringe benefits in violation of ERISA. 870 F.2d 1214, 1222 (7th Cir. 1989). Not only was there no alter ego claim at issue in *Gould*, but the Seventh Circuit Court of Appeals repeatedly cited the undisputed evidence in that case that the actuarial soundness of the funds at issue was being jeopardized by the employer's failure to contribute. *Id.* The Seventh Circuit found that evidence sufficient to establish irreparable harm, which a private litigant moving for an injunction in an ERISA case must demonstrate. *Id.* at 1217-18, 1221-22 (rejecting the district court's conclusion that seeking an injunction pursuant to ERISA does not require a showing of irreparable harm).

Unlike in *Gould*, Plaintiffs have presented no evidence that the actuarial soundness of the Funds at issue is in jeopardy. To the contrary, the administrator of the Funds testified that the Funds are fully funded. [Filing No. 164 at 116.] There is also no evidence that any Bronger or Masonry employee has made a claim on the Funds or that the Funds remain liable for health care

16

expenses for claims that have not been made. [Filing No. 164 at 118; Filing No. 164 at 123.] Nor is there evidence that any Masonry or Bronger employee has vested in the defined-benefit plan based on years of service with Bronger or that any employee would be vested based on the combination of time with Masonry and Bronger. [Filing No. 164 at 120.] Finally, there is no evidence that the Funds have undertaken any action to notify any Bronger or Masonry workers that they have rights in the Funds, or that the Funds remain liable for any claims that have not been submitted thus far. This evidence is a material distinction from the evidence supporting the requested injunction in *Gould*.

Plaintiffs also cite *Seide v. Crest Color, Inc.*, 835 F. Supp. 732 (S.D.N.Y. 1993), in support of their request, emphasizing that injunctive relief was entered in that case against a company accused of being the alter ego of a signatory to a collective bargaining agreement. [Filing No. 151 at 6.] *Seide*—a single out-of-Circuit district court case—"has little precedential effect" and is not binding on this Court. *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987). Moreover, *Seide* is distinguishable because the plaintiff in that case showed irreparable harm based on evidence that the alter ego company was transferring assets to attempt to avoid the ultimate money judgment that the plaintiff was likely to secure. *Seide*, 835 F. Supp. at 735. There is no such evidence in this case. Plaintiffs seek prospective injunctive relief against Masonry only, which had approximately $11,000 in its bank account in March 2015. [Filing No. 164 at 212.] By June 2015, that amount had grown to approximately $95,000.[5] [Filing No. 164 at 252.] There is no evidence in the record that Masonry has stopped performing work or

---

[5] Bronger ceased business on or around January 1, 2015, and has been liquidating its assets, [Filing No. 164 at 306], so it is possible that Masonry's account balance is increasing because it is no longer transferring money to Bronger.

17

is disposing of its assets to evade the money judgment Plaintiffs will receive if they prevail on the merits of their claims, making this case materially different from *Seide*.

As a final point, the Court notes that Plaintiffs filed this action in June 2014 but did not move for injunctive relief until May 2015—almost one year later. Delay in pursuing a preliminary injunction raises questions regarding the allegations of irreparable harm if the requested relief is not entered. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001). Plaintiffs have not explained what about the harm they are allegedly suffering was bearable for almost a year before necessitating the requested injunction.

In sum, based on the evidence of record, the Court concludes that Plaintiffs have not shown that they will likely suffer irreparable harm for which there is an inadequate remedy at law necessitating the injunctive relief they seek before a trial on the merits. In other words, even though they are likely to succeed on the merits, they have not shown that a money judgment in their favor after resolving their claims on the merits would be seriously deficient as a remedy for the harm suffered.

### C. Effect of Findings

The Court only proceeds to the balancing phase of the analysis if a plaintiff satisfies all requirements of the "threshold phase" for obtaining a preliminary injunction. *Girl Scouts*, 549 F.3d at 1086. Although the Court has found that Plaintiffs are likely to succeed on the merits, Plaintiffs have failed to satisfy one of the threshold requirements for obtaining injunctive relief—namely, that without the requested injunction they will suffer irreparable harm for which there is an inadequate remedy at law prior to the final resolution of their claims. Thus, the Court "must deny the injunction." *Id.* ("If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction.") (citing

18

*v. Mead Johnson & Co.*, 971 F.2d 6, 19 (7th Cir. 1992) (holding that a plaintiff's failure to demonstrate irreparable harm "dooms a plaintiff's case and renders moot any further inquiry")).[6]

## V.
## CONCLUSION

The Seventh Circuit has emphasized that "a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts*, 549 F.3d at 1085. Based on the evidence of record, this is not such a case. For the reasons detailed herein, the Court **DENIES** Plaintiffs' request for injunctive relief. [Filing No. 118.]

Date: August 12, 2015

_[signature]_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF**

Donald D. Schwartz
ARNOLD & KADJAN
dschwartz@arnoldandkadjan.com

Patrick C. Badell
BADELL & WILSON
bwlaw@bwlawoffice.com

---

[6] If the Court had proceeded to the balancing phase of the analysis, injunctive relief would not have been automatic since the Court would also have to "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted." *Stuller*, 695 F.3d at 678. Evidence was presented at the hearing that the entry of Plaintiffs' requested injunction would "be devastating" to Masonry. [Filing No. 164 at 264.] Mr. McKinney testified that because Masonry's non-Union employees are directly receiving an amount equal to the fringe benefits allegedly owed to the Funds, "they would quit" if Masonry was forced to stop paying that amount directly to them and instead paid it to the Funds. [Filing No. 164 at 264.] Mr. McKinney further testified that Masonry would be unable to pay its current wage to its employees as well as the amount of fringe benefits at issue to the Funds, which would require it to "cease operations" and delay Masonry's projects, some of which are public works jobs. [Filing No. 164 at 266-67.] The Court need not balance this evidence against the nature or degree of the Plaintiffs' injury, however, because Plaintiffs have not met a threshold requirement for obtaining injunctive relief.

Grant R. Piechocinski
Grant R. Piechocinski Arnold and Kadjan
gpiechocinski@arnoldandkadjan.com